**THE LAW OFFICES OF BRANDEE J.K. FARIA**

BRANDEE J.K. FARIA        6970
1164 Bishop St. Ste 933
Honolulu, Hawai'i 96813
Telephone: (808) 523-2300
*brandee@farialawfirm.com*


**KALIEL GOLD PLLC**

JEFFREY D. KALIEL        (*pro hac vice application forthcoming*)
SOPHIA GOLD        (*pro hac vice application forthcoming*)
1100 15th Street NW, 4th Floor
Washington, D.C.  20005
(202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielgold.com*

Attorneys for Plaintiff ZACHARY
PURCELL, individually and on behalf
of all others similarly situated

IN THE UNITED STATES DISTRICT COURT

STATE OF HAWAI'I

| | | |
|---|---|---|
| ZACHARY PURCELL, individually and on behalf of all others similarly situated, | ) ) ) | CIVIL NO. _____ (Other Civil Action) |
| | ) | |
| Plaintiffs, | ) | **COMPLAINT** |
| | ) | |
| vs. | ) | **JURY TRIAL REQUESTED** |
| | ) | |
| GUILD MORTGAGE COMPANY, LLC | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Zachary Purcell ("Plaintiff"), individually and on behalf of all other persons similarly situated by their attorneys, make the following allegations:

## INTRODUCTION

1.     This is a putative class action complaint brought by Plaintiff, individually, and on behalf of all other persons similarly situated, against Guild Mortgage Company, LLC ("Guild Mortgage" or "Defendant") under federal and state law including the Homeowners Protection Act of 1998, 12 U.S.C. § 4901, et seq. ("HPA"), and Hawai'i consumer protection laws, breach of contract, unjust enrichment and negligence seeking redress for Defendant's deceptive practices aimed at maximizing fees assessed on unsuspecting borrowers' accounts who qualify for cancellation of their Private Mortgage Insurance ("PMI").

2.     Specifically, Defendant, in conjunction with the PMI company, failed to provide borrowers with an annual written statement that sets forth their right to cancel their PMI after certain thresholds were reached, and misrepresented to borrowers the amount of time Defendant could continue to collect PMI after the loan qualified for PMI cancellation. As a result, Defendant Guild Mortgage gained additional monthly PMI fees from Plaintiff and Class Members, in some cases for more than one year.

3.     Lenders like Defendant require PMI for most borrowers who put down

less than twenty (20) percent of the property's value as a down payment when purchasing a property. Lenders require PMI because it protects them in the event the borrower defaults.

4.     Defendant, as a mortgage servicer, profits from fees assessed against the mortgage accounts it services. Servicers, like Defendant, make tremendous profits from collection of PMI monthly fees. Defendant's incentive, therefore, is to assess as many monthly PMI fees as possible, whether lawful or not, and to collect all outstanding fees and costs prior to applying borrowers' payments to interest and principal.

5.     In an effort to stem lenders' abuses in terminating PMI, Congress passed the Homeowner's Protection Act of 1998, 12 U.S.C. § 4901, et seq. ("HPA"). The HPA establishes that a borrower may request cancellation of PMI, when the principal balance on the mortgage declines to eighty (80) percent of the original value of the property ("Cancellation Date"). §§ 4901(2), 4902(a).

6.     Statutorily mandated notifications are to be provided annually by the lenders when PMI is in place to provide borrowers a written statement of their rights under the HPA regarding PMI cancellation or termination ("Annual Disclosures"). § 4903(a)(3). Defendant failed to provide these notices, causing Plaintiff to continue to pay PMI fees well past the date on which he was eligible to have his PMI policy cancelled.

7.    This action was brought by Plaintiff to stop Defendant's scheme and to recover the improper, deceptive, unnecessary, fictitious, false and unreasonable PMI fees charged to and paid by Plaintiff and putative Class Members.

## PARTIES

8.    Plaintiff is a citizen and resident of the City and County of Honolulu, state of Hawai'i.

9.    Defendant Guild Mortgage Company, LLC services residential mortgage loans in the state of Hawai'i and throughout the United States, including loans within this District.  Guild Mortgage has its headquarters in San Diego, California.  According to its website, Guild Mortgage oversees 70 branch offices in 11 states.  Other publicly available data indicates that Guild Mortgage has additional branches in additional states.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over the subject matter of this action pursuant to 11 U.S.C. § 1332(d)(2) as various members of the Class are citizens of a state different from Defendant's state and the aggregate amount in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars.

11.    Further, this Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1332 and 1367.

12.    This Court has personal jurisdiction over Defendant pursuant to FRCP

4(k)(1)(a)  and HRS § 634-35. In addition, this Court may exercise supplemental jurisdiction over the state law claims because the state and federal claims derive from a common nucleus of operative facts so that a plaintiff would ordinarily be expected to try them all in one judicial proceeding. See 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

13.     Diversity jurisdiction is also conferred over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, § 7, 119 Stat. 13 ("CAFA"). Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class members are aggregated. 28 U.S.C. § 1332(d)(6).

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant's contacts are sufficient to subject it to personal jurisdiction in this District. Further, Defendant is found, does business or transacts business within this District.

## PLAINTIFF'S EXPERIENCE

15.     Plaintiff is a consumer who purchased his home in Honolulu on April 27, 2017.   Thereafter, he refinanced his original loan with Guild Mortgage in December, 2017.

16.     Plaintiff's subject mortgage loan required PMI at its inception. As such, Plaintiff was required to execute a PMI disclosure form ("Disclosure") at the closing

of the subject loan in December,  2017 (See Disclosure Form attached hereto as

**Exhibit A**).

17.    The Disclosure states that "under certain circumstances, federal law

gives [Plaintiff] the right to cancel PMI." *Id*. at p. 1

18.    The Disclosure allowed for Borrower Requested Cancellation of PMI
as follows:

> You have a right to request in writing that PMI be cancelled on or after the
> following dates:
>
> 1. The date the principal balance of your loan is first **scheduled** to reach eighty
> percent (80%) of the Original Value of the property. This date is **August 1,
> 2020**…
>
> 2. The date the principal balance **actually** reaches eighty percent (80%) of the
> original value of the property.

*Id*. at pp. 1-2 (emphasis in the original). As such, the initial Cancellation Date of

August 1, 2020 was approximately three years after the closing of the loan.

19.    The Disclosure further provided that:

> Upon receipt of your written request, lender or loan servicer will determine if
> your loan satisfies all of the following conditions for cancellation of PMI:
>
> 1. You have a Good Payment History; and
>
> 2. Lender receives, if requested and at your expense, evidence satisfactory to
> the holder of your loan that the value of the property has not declined below
> its Original Value…; and
>
> 3. You satisfy any requirement of the mortgage holder for certification that
> your equity in the mortgage is unencumbered by a subordinate lien; and
>
> 4. You are current on the payments required by your mortgage loan.

*Id.* at p. 2.

20.    Defendant failed, however, to provide Plaintiff with any statutorily required Annual Disclosures to notify him of the status of the PMI—or of his right to cancel.

21.    Had Plaintiff received the statutorily required notice he would have sent a written request for cancellation along with any required documentation on or about the Cancellation Date of August 1, 2020, as he qualified for cancellation of the PMI at that time.

## FACTUAL ALLEGATIONS

22.    This action stems from an unjust scheme undertaken by Defendant to maximize profit by failing to notify Plaintiff and Class Members about their option to cancel their PMI when their loan was eligible to do so. As a result, Defendant collected monthly PMI fees that were unearned, fraudulent, illegal, excessive, repetitive, unfair, deceptive, false, and fictitious by charging them to unsuspecting borrowers' accounts.

23.    Rather than earn income from the interest on these loans, financial institutions like Defendant are paid a fee for their loan administration services and they retain as profits additional fees generated such as a portion of the PMI fees collected, with the balance going to the PMI company.

24.    As housing prices increased in the marketplace (and the corresponding

7

down payment amounts increased), saving for enough of a down payment became difficult for many perspective homeowners and as a result, they put less than twenty (20) percent down on their home purchases. Lenders addressed the risk of less than eighty (80) percent loan to value by instituting PMI to mitigate loss in case of foreclosure.

25.    The lender is able to make loans in excess of eighty (80) percent of the property's value by receiving insurance from the PMI company, which protects the lender if the borrower defaults on the loan. While the lender is the beneficiary of the PMI, the borrower pays for the insurance though the addition of monthly premiums to the borrower's monthly mortgage payment.

26.    As the PMI is arranged directly by the lender, the borrowers often have little or no opportunity to choose their PMI company. Further, the terms and conditions of the insurance policy, as well as the cost of the policy, are determined by the lender and the provider of PMI, rather than negotiated between the borrower and the provider of the PMI.

27.    The HPA mandates that while PMI is in place on the borrower's loan, the lender and/or mortgage servicer must provide annual written statements of the borrower's rights under HPA regarding the PMI cancellation or termination. 12 U.S.C. § 4903(a)(3).

28.    Specifically, the HPA states:

> If private mortgage insurance is required in connection with a residential mortgage transaction, the servicer shall disclose to the mortgagor in each such transaction **in an annual written statement**--
> (A) **the rights of the mortgagor under this chapter to cancellation or termination of the private mortgage insurance requirement**; and
> (B) an address and telephone number that the mortgagor may use to contact the servicer to determine whether the mortgagor may cancel the private mortgage insurance.

12 U.S.C. § 4903(a)(3) (emphasis added).

29.     Historically, lenders or servicers such as Guild Mortgage had varied policies and procedures used for cancelling or terminating PMI coverage when borrowers' loans reached eighty (80) percent equity. However, borrowers had little recourse when lenders such as Defendant refused to cancel PMI.

30.     As such, Congress codified the Homeowners Protection Act ("HPA") under 12 U.S.C. § 4901, et seq. that governs when private mortgage insurance must be terminated or cancelled and when the lender must send notices to the borrower. The HPA is largely a disclosure statute mandating disclosure to inform borrowers when PMI can be cancelled and when it must be automatically terminated, as well as, requiring annual notices to the borrower of same

31.     Generally, the HPA requires termination of PMI, on the date when the principal balance of the loan is first scheduled to reach seventy-eight (78) percent of the Original Value of the property securing the loan provided the mortgagor is current on the payments required under the mortgage. 12 U.S.C. §§ 4901(18), 4902(b).

32.     The HPA also provides that a mortgagor may request cancellation of PMI, on, or at any time after, the date when the principal balance on the mortgage declines to eighty (80) percent of the Original Value of the property. 12 U.S.C. §§ 4901(2), 4902(a).

33.     Borrowers such as Plaintiff and putative Class Members are provided with PMI disclosures while at the closing table when purchasing property along with a large stack of loan documents which they rarely read or understand.

34.     The lender along with the PMI company knew at the outset that Plaintiff and Class Members would very rarely remember to request PMI cancellation three years or so after closing. As such, the HPA was enacted to, *inter alia,* rectify the policy of lenders intentionally failing to notify borrowers that they may cancel their PMI when the subject loans are eligible for cancellation and then continuing to collect unnecessary and additional PMI for months, if not years.

35.     Defendant along with the PMI company failed to provide such Annual Disclosures to Plaintiff.

36.     As a result, Defendant continued to collect PMI fees from the unsuspecting Plaintiff for eleven months and counting after Plaintiff qualified to cancel him PMI insurance. Had Defendant provided the statutorily required notice, Plaintiff would have been able to terminate PMI and save over eleven months and counting of unnecessary PMI payments.

37.    Defendant then knowingly misrepresented these unreasonable, deceptive, false, and excessive PMI fees to Plaintiff and the Class Members by portraying them as legitimate, required charges on the monthly mortgage statements as if the loans did not qualify for PMI cancellation.

38.    Plaintiff would have cancelled his PMI had he been provided the proper notification and/or if the fee had not been misrepresented on monthly statements as required charges.

39.    Defendant continued to charge monthly premiums well after Plaintiff and Class Members had a right to cancel the insurance in order to increase their profits at the expense of unsuspecting borrowers such as Plaintiff and Class Members.

40.    Both Defendant and the PMI company profited handsomely from the scheme at the expense of Plaintiff and the other Class Members.

41.    Due to the high volume of loans Defendant services, tens of thousands of borrowers are believed to be victims of this scheme. As a result of the PMI scheme, Defendant has wrongfully obtained Plaintiff's and the Class Members' money and increased their debt obligations without justification and contrary to applicable law.

## **CLASS ACTION ALLEGATIONS**

42.    Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.  The Classes are defined as:

> All persons who, within the applicable statute of limitations, were charged PMI fees by Defendant after borrowers had a right to cancel their PMI insurance.

> All persons in Hawai'i who, within the applicable statute of limitations, were charged PMI fees by Defendant after borrowers had a right to cancel their PMI insurance.

43.    Excluded from the Classes are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

44.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add   subclass(es), if necessary, before this Court determines whether certification is appropriate.

45.    The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because Guild Mortgage has acted on grounds generally applicable to the

class.  Such common legal or factual questions include, but are not limited to:

   a) Whether Defendant had a policy and practice of frequently charging persons unlawful, deceitful, false, fictitious and unreasonable PMI fees after the fees should have been cancelled;

   b) Whether Defendant failed to provide annual PMI disclosures and any other notifications of a right to cancel to its borrowers;

   c) Whether Defendant violated 12 U.S.C. § 4901, et seq.;

   d) Whether Defendant was unjustly enriched by its deceptive practices;

   e) Whether Defendant committed fraud by charging for and collected PMI fees that it should not have been charged;

   f) Whether Defendant's unlawful, unfair, false, fictitious and deceptive practices harmed Plaintiff and the Classes;

   g) Whether the Court can enter a judgment for declaratory and injunctive relief; and

   h) The proper measure of damages.

46.    The parties are numerous such that joinder is impracticable.  Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Guild Mortgage's records. Guild Mortgage has the administrative capability through its computer systems and

other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

47.    It is impracticable to bring members of the Classes' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

48.    Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by Guild Mortgage, as described herein.

49.    Plaintiff is a more than adequate representative of the Classes in that Plaintiff has a residential mortgage and has suffered damages as a result of Guild Mortgage's illegal conduct.  In addition:

    a) Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;

b) There is no conflict of interest between Plaintiff and the putative members of the Classes;

c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

50. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

51. Guild Mortgage has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Classes as a whole.

52. All conditions precedent to bringing this action have been satisfied and/or waived.

## FIRST CAUSE OF ACTION
## Violation of the Homeowner's Protection Action of 1998 , 12 U.S.C § 4901, et seq.

53. Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

54. Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant pursuant to HPA, 12 U.S.C. § 4901, et seq.

55. Plaintiff and Class Members are "mortgagors" as defined in 12 U.S.C. § 4901(11) and Defendant is a "mortgagee" as defined in 12 U.S.C. § 4901(10) and/or "servicer" as defined in 12 U.S.C. § 4901(16).

56.    The HPA under 12 U.S.C. § 4903(a)(3) provides that the servicers must provide the borrowers with an annual written statement that sets forth the right of the borrower to cancel and terminate PMI along with the address and telephone number that the borrower may use to contact the servicer whether the borrower may cancel PMI.

57.    Defendant violated 12 U.S.C. § 4903(a)(3) by failing to provide required annual statements to Plaintiff or Class Members as required by the HPA.

58.    As a result of Defendant's conduct, Plaintiff and Class Members incurred damages. Plaintiff and members of the Class have been required to pay PMI past their termination dates due to Defendant's failure to provide Annual Disclosures in violation of the HPA.

59.    The said violation was discovered by Plaintiff on or about August, 2020.

60.    Based on the foregoing, and pursuant to 12 U.S.C. § 4907, Plaintiff and the Class Members are entitled to actual and statutory damages of the lessor of five hundred thousand dollars ($500,000.00) or one percent of Defendant's gross revenues whichever is less, plus costs and reasonable attorney fees.

## SECOND CAUSE OF ACTION
### Breach of Contract

61.    Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

16

62.    Plaintiff brings this claim for relief on behalf of himself and the members of the Classes.

63.    Plaintiff entered into a standard loan agreement that typically provides, *inter alia*, that Defendant may charge fees for services performed for the purpose of protecting Guild Mortgage's interest in the Property and rights.

64.    Members of the Classes entered into mortgage agreements with substantially similar language that precludes Defendant from assessing fees for false, unneeded or unnecessary fees.

65.    According to the agreements the charges must be for the purpose of protecting the Guild Mortgage's interest in the property not for generating fees for the lender.

66.    The charges must also be for services that were necessary

67.    Defendant breached these mortgage agreements by assessing fees against Plaintiff and the Class Members for PMI fees that were not necessary and should have been cancelled.

68.     As a result of the breach of contract Defendant has caused and continues to cause injury to Plaintiff and the Class Members.

69.    Defendant also breached its duty of good faith and fair dealing by assessing fees for unneeded and unnecessary services.

70.    As a result of the foregoing, Plaintiff and the Class Members are

entitled to their actual damages, punitive damages, and an award of their reasonable attorney's fees and costs.

71.    As a result of the foregoing, Plaintiff and the Class Members are also entitled to injunctive, equitable, and declaratory relief, including an injunction barring Defendant from committing future breaches of its contractual obligations.

### THIRD CAUSE OF ACTION
### Unjust Enrichment

72.    Plaintiff repeats, reiterates and alleges each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

73.    By its wrongful acts and omissions of material facts, Defendant was unjustly enriched at the expense of Plaintiff.

74.    Defendant kept Plaintiff's 11 PMI payments (and counting) even though Plaintiff's PMI should have been cancelled.

75.    At all relevant times, Defendant knew that borrowers such as Plaintiff's PMI was subject to cancellation but still collected PMI fees and such fees were not necessary to protect or defend the mortgage agreement.

76.    As a result of its actions, Defendant was unjustly enriched to the extent that it wrongly collected PMI fees after the cancellation period and that the insurance was an unnecessary insurance or service at the expense of Plaintiff and Class Members.

77.    It would be inequitable and unconscionable for Defendant to retain the profit, benefit, and other compensation it obtained from their fraudulent, deceptive and misleading conduct alleged herein.

78.    As a result of the foregoing, Plaintiff and the Class Members are entitled to their actual damages, punitive damages, and an award of their reasonable attorney's fees and costs.

79.    As a result of the foregoing, Plaintiff and the Class Members are also entitled to injunctive, equitable, and declaratory relief, including an injunction barring Defendant from committing future breaches of its contractual obligations.

## FOURTH CAUSE OF ACTION
### Negligence

80.    Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

81.    Defendant had a duty to notify Plaintiff that his PMI was subject to cancellation and to cancel his PMI accordingly and not to collect unnecessary or unwarranted fees upon his account and that of the eligible Class Members.

82.    Defendant breached that duty by failing to notify, collecting unnecessary PMI fees, assessing mortgage accounts for unwarranted and unnecessary fees.

83.    Defendant's actions caused Plaintiff and the eligible Class Members to accrue unnecessary fees and to accumulate more debt.

84.    As a result of the foregoing, Plaintiff and the Class Members are entitled to their actual damages, punitive damages, and an award of their reasonable attorney's fees and costs.

85.    As a result of the foregoing, Plaintiff and the Class Members are also entitled to injunctive, equitable, and declaratory relief, including an injunction barring Defendant from committing future breaches of their contractual obligations.

### FIFTH CAUSE OF ACTION
### Violations of Hawai'i Revised Statutes, Chapter 480 Unfair or Deceptive Acts or Practices

86.    Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

87.    This claim is asserted on behalf of the members of the Classes pursuant to HRS § 480, *et seq*.

88.    Plaintiff is both a consumer and a natural person as defined by HRS § 480-1.

89.    HRS § 480-2(a), declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

90.    Guild Mortgage violated HRS Chapter 480 and specifically § 480-2(a), by the conduct alleged above including, but not limited to, employing the unfair and deceptive acts and practices set forth herein. Guild Mortgage's conduct of misrepresenting, concealing, suppressing, or otherwise omitting its actual practices

created a likelihood of confusion or of misunderstanding.

91.    As redress for Guild Mortgage's repeated and ongoing violations of HRS § 480-2(a), Plaintiff and the Classes are entitled to, inter alia, damages, reasonable attorneys' fees and costs, and declaratory relief, pursuant to § 480-13.

**SIXTH CAUSE OF ACTION**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***

92.    Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

93.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Guild Mortgage's conduct related to deceptively failing to notify, collecting unnecessary PMI fees, and assessing mortgage accounts for unwarranted and unnecessary fees PMI fees violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

94.    The UCL imposes strict liability. Plaintiffs need not prove that Guild Mortgage intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

95.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing

the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

96.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

97.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

98.    Guild Mortgage committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly continuing to charge Plaintiff and the Class Members PMI Fees without providing Plaintiff and Class Members with the proper Annual Disclosures advising them of their right to cancel or terminate PMI fees.

99.    Defendant's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

100.    The harm to Plaintiff and the Classes outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

101.    Defendant's conduct also constitutes an "unlawful" act under the UCL because, as detailed in Plaintiff's First Cause of Action above, it also constitutes a

violation of section 12 U.S.C. § 4903(a)(3), *supra*, in that Guild Mortgage failed to provide borrowers with an annual written statement that sets forth the right of the borrower to cancel and terminate PMI along with the address and telephone number that the borrower may use to contact the servicer whether the borrower may cancel PMI.

102.    Guild Mortgage's business practices have misled Plaintiff and the proposed Classes and will continue to mislead them in the future.

103.    Plaintiff relied on Defendant's misrepresentations about PMI cancellation and termination of delivery in choosing to utilize Guild Mortgage as a loan servicer.

104.    Had Plaintiff known that Guild Mortgage would continue to collect unwarranted PMI fees without providing Plaintiff with an annual statement, he would have sent a written request for cancellation along with any required documentation on or about the Cancellation Date of August 1, 2020, or chosen another loan servicer.

105.    As a direct and proximate result of Guild Mortgage's unfair, fraudulent, and unlawful practices, Plaintiff and Class Members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class Members that they will be deceived into paying PMI fees beyond the time period that such payment is required.

106.    As a result of its unfair, fraudulent, and unlawful conduct, Guild Mortgage has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

107.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

a)  Certification for this matter to proceed as a class action on behalf of the Classes;

b)  A declaration that Defendant has committed the violations alleged herein;

c)  An award of actual damages;

d)  An award of punitive damages;

e)  An award of statutory damages pursuant to 12 U.S.C. 4901, *et seq*;

f)  An award of compensatory damages;

g) Ordering Defendant to disgorge the payments and profits it wrongfully obtained at the expense of Plaintiff and Class Members;

h) Ordering that restitution be made to Plaintiff and Class Members for Defendant's unjust enrichment;

i) Ordering that an accounting be made by Defendant of its wrongfully obtained payments and profits;

j) An injunction along with equitable declaratory relief preventing Defendant from engaging in future fraudulent practices as permitted by law or equity, including directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution; and disgorgement of all monies acquired by Defendant by means of any act or practice declared by the Court to be wrongful;

k) Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

l) For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable pursuant to US Const. amend. 7, Fed. R. Civ. P. 38.

Dated:  Honolulu, Hawai'i, June 3, 2021

                              */s/ Brandee J.K. Faria*
                              _____

BRANDEE J.K. FARIA
LAW OFFICES OF BRANDEE J.K.
FARIA, LLLC
1164 Bishop St. Ste 933
Honolulu, Hawai'i 96813
(808) 523-2300
*brandee@farialawfirm.com*

JEFFREY D. KALIEL
SOPHIA GOLD
KALIEL GOLD PLLC
1100 15th Street NW, 4th Floor
Washington, D.C.  20005
(202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielgold.com*

Attorneys for Plaintiff ZACHARY
PURCELL, individually and on
behalf of all others similarly situated